W. B. RICE, APPELLEE, V. WILLIAM WINTERS ET AL.,
APPELLANTS.

FILED JUNE 19, 1895.   No. 6435.

1. **Bill of Exceptions:** AUTHORITY OF CLERK TO SIGN. The mere stipulation of counsel in a case that the clerk of a court may sign and allow a bill of exceptions is not sufficient to confer authority upon him to do so. To confer authority upon the clerk of a district court to sign and allow a bill of exceptions it must appear that the judge is dead, or that he is prevented by sickness, or absence from his district, from signing and allowing the bill; or the parties to the litigation, or their counsel, must agree upon the bill of exceptions, and attach thereto their written stipulation to that effect. *Scott v. Spencer*, 42 Neb., 632, followed.

2. **Mortgages:** PAYMENT: SUBROGATION. A owned real estate on which B had a first and C a second mortgage. D loaned A money to pay off B's mortgage. A agreed to and did secure D's loan by an apparent first mortgage on the real estate. The loan made by D was used in paying off the mortgage of B, and he released the same. When the mortgage of A to D was delivered, the mortgage records showed a marginal release of C's mortgage signed "C, by J." It turned out that C's mortgage had never been paid, and was released by J without authority. *Held*, That D was not entitled to be subrogated to the lien held by B by virtue of his mortgage against the real estate.

3. **Subrogation.** The doctrine of subrogation is not administered by courts of equity as a legal right, but the principle is applied to subserve the ends of justice and to do equity in the particular case under consideration. It does not rest on contract, and no general rule can be laid down which will afford a test in all cases for its application. Whether the doctrine is applicable to any particular case depends upon the peculiar facts and circumstances of such case. *South Omaha Nat. Bank v. Wright*, 45 Neb., 23, followed.

4. ———: VOLUNTARY PAYMENT. A person seeking the benefit of subrogation must have paid a debt due to a third party before he can be substituted to that party's right; and in doing this he must not act as a mere volunteer, but on compulsion to save himself from loss by reason of a superior lien or claim on the

part of the person to whom he pays the debt. The right of sub-
rogation is never accorded in equity to one who is a mere volun-
teer in paying a debt of one person to another. *Ætna Life Ins.
Co. v. Middleport*, 124 U. S., 534, followed.

5. ———: MORTGAGES: PRIORITY. The fact that a subsequent mort-
gagee's lien will occupy the same relation to the property, if one
who has advanced money, secured by a mortgage on the real es-
tate to pay off the prior mortgage, is subrogated to the rights of
the holder of such first mortgage, affords no reason why equity
should permit the party so advancing the money to be subro-
gated to the rights of the holder of the first mortgage.

6. **Mortgages:** LIENS. When a first mortgage lien existing against
real estate is paid off, the lien of a second mortgage thereon be-
comes at once by operation of law a first lien on the property,
and this first lien and the right to enforce it as such are vested
rights.

7. **Subrogation.** Courts of equity will not apply the doctrine of
subrogation where to do so would be to deprive a party of a legal
right.

8. **Mortgages:** ABSTRACTS OF TITLE. An intending purchaser or
mortgagee of real estate relies and acts upon the recitals of an
abstract made of the title to such real estate at his peril.

9. ———: ———: RECORDS: NOTICE. An abstract of title of cer-
tain real estate recited that a mortgage recorded thereon in favor
of C had been released on the margin of the record where re-
corded. *Held*, (1) That an intending mortgagee of the property
was bound to take notice of the mortgage records, and if C's
mortgage had not in fact been released and the mortgagee was
prejudiced by relying upon the recital of the abstract, that his
injury was the result of his negligence; (2) that if C's mortgage
appeared released, on the margin of the record where recorded,
by some one else purporting to act for him, the intending
mortgagee was bound to know at his peril that the party pre-
tending to act for C had authority to do so; (3) that whether
the mistake of the mortgagee was one of law or fact, or both,
whatever injury he sustained by reason of such mistake, was
attributable to his lack of care, and afforded no reason for sub-
rogating him to the rights of the holder of a mortgage on the
premises prior to C's, which the said mortgagee had paid off
with the proceeds of a mortgage he took on said property, rely-
ing upon the correctness of said abstract.

APPEAL from the district court of Buffalo county.
Heard below before NEVILLE, J.

Rice v. Winters.

The facts are stated by the commissioner.

*Calkins & Pratt,* for appellants:

The appellants contend that the appellee, not being a surety or guarantor of the defendant Winters, nor having any junior lien upon the premises of any kind to protect, and not being under any obligation, moral or legal, to pay the notes and mortgages executed by Winters to Moore, was a stranger. (*Suppiger v. Garrels,* 20 Ill. App., 625; *Ætna Life Ins. Co. v. Town of Middleport,* 124 U. S., 549.)

When appellee loaned Winters the money with which to liquidate, he was a volunteer. (*Ætna Life Ins. Co. v. Town of Middleport,* 124 U. S., 549; *Suppiger v. Garrels,* 20 Ill. App., 625; *Richards v. Griffith,* 28 Pac. Rep. [Cal.], 485.)

There being no agreement or understanding between Winters and the appellee that the Moore mortgages were to be assigned to the appellee or that they were to be kept alive and on foot for his use and benefit, he is not entitled, as a matter of course, in equity to be subrogated. (*National Bank v. Cushing,* 53 Vt., 326; *Dering v. Earl of Winchelsea,* 1 L. Cas. Eq. [6th ed., Eng.], 14; *Watson v. Wilcox,* 39 Wis., 643; *Downer v. Wilson,* 33 Vt., 1; *Guy v. Du Uprey,* 16 Cal., 196; *Sandford v. McLean,* 3 Paige Ch. [N. Y.], 122; *Wormer v. Waterloo Agricultural Works,* 14 N. W. Rep. [Ia.], 332; *Fort Dodge Building & Loan Association v. Scott,* 53 N. W. Rep. [Ia.], 282; *Bunn v. Lindsay,* 7 S. W. Rep. [Mo.], 473; *Grady v, O'Reilly,* 22 S. W. Rep. [Mo.], 798; *Kleiman v. Geiselman,* 21 S. W. Rep. [Mo.], 796; *Kitchell v. Mudgett,* 37 Mich., 81; *Shinn v. Budd,* 14 N. J. Eq., 237; *Curtis v. Kitcher,* 8 Mart. [La.], 706; *Hough v. Ætna Life Ins. Co.,* 57 Ill., 318; *Small v. Stagg,* 95 Ill., 39; *Wentworth v. Tubbs,* 55 N. W. Rep. [Minn.], 543; *Appeal of McCleary,* 12 Atl. Rep. [Pa.], 160; Sheldon, Subrogation, secs. 2, 3, 240; *Cox v. Baldwin,* 1 Miller [La.], 147.)

*Winston & Meagher,* also for appellants:

The demand of a creditor which is paid with the money of a third person, without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished. (*Pearce v. Bryant Coal Co.,* 121 Ill., 590; *Swan v. Patterson,* 7 Md., 164; *Bank of United States v. Winston,* 2 Brock. [U. S.], 254; *Burr v. Smith,* 21 Barb. [N. Y.], 262; 1 Jones, Mortgages, 877; *Collins v. Adams,* 53 Vt., 433; *Gadsden v. Brown,* 1 Speer's Eq. [S. Car.], 37; *Bishop v. O'Conner,* 69 Ill., 431; *Sandford v. McLane,* 3 Paige Ch. [N.Y.], 117; *Banta v. Garmo,* 1 Sandf. Ch. [N. Y.], 384; *Wilkes v. Harper,* 1 Comst. [N. Y.], 586; *Douglass v. Fagg,* 8 Leigh [Va.], 588; *Young v. Morgan,* 89 Ill., 199; 2 May, Insurance, sec. 558; *Erb's Appeal,* 2 P. & W. [Pa.], 296; *Goswiler's Estate,* 3 P. & W. [Pa.], 200; *McGinnis' Appeal,* 16 Pa. St., 445; *Lloyd v. Galbraith,* 32 Pa. St., 103; *Richmond v. Marston,* 15 Ind., 134; *Marvin v. Vedder,* 5 Cow. [N. Y.], 671; *Clark v. Moore,* 76 Va., 262; *Hooper v. Robinson,* 98 U. S., 539.)

Where the demand of a creditor is paid by the money of a third person, not himself a creditor, without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, the demand is absolutely extinguished. (*White v. Cannon,* 125 Ill., 412; *Bayard v. McGraw,* 1 Ill. App., 134.)

A mere stranger or volunteer cannot, by paying a debt for which another is bound, be subrogated to the creditor's rights, in respect to the security, by the real debtor; but if the person who pays the debt is compelled to pay for the protection of his own interests and rights, then subrogation should be made. (*Beaver v. Slanker,* 94 Ill., 183; *Downer v. Miller,* 15 Wis., 677; *Wilkes v. Harper,* 1 N. Y., 586; *Van Winkle v. Williams,* 38 N. J. Eq., 105; Paige, Modern Equity Jurisprudence, p. 875; *Wadsworth v. Blake,* 43 Minn., 509; *Evans v. Rhea,* 14 S. W. Rep. [Ky.], 82.)

Where the creditor of a debtor, out of necessity to pro-
tect his own interest, purchases a prior lien or incumbrance
he. will be entitled in equity to be subrogated; but the
mere volunteer or a stranger will not be. (*Beaver v. Slanker*,
94 Ill., 175.)

Where there was an agreement, the doctrine of subro-
gation is recognized. (*Gans v. Thieme*, 93 N. Y., 225;
·*Tradesmen's Building Association v. Thompson*, 32 N. J.
Eq., 133; *Detroit Fire & Marine Ins. Co. v. Aspinwall*, 12
N. W. Rep. [Mich.], 214; *Sidener v. Pavey*, 77 Ind., 241;
*New Jersey M. R. Co. v. Wortendyke*, 27 N. J. Eq., 660;
*Shinn v. Budd*, 14 N. J. Eq., 234.).

·Where there is no agreement that the party so advanc-
ing the money shall be subrogated to the prior lien-holder,
there can be no subrogation in equity. (*Small v. Stagg*, 95
Ill., 39; *White v. Cannon*, 125 Ill., 412; *Banta v. Garmo*,
1 Sandf. Ch. [N. Y.], 383.)

Even where there is an agreement it has been held that
a volunteer cannot be subrogated to the position of a prior
claimant. (*Mather v. Jenswold*, 32 N. W. Rep. [Ia.], 512;
*Wormer v. Waterloo Agricultural Works*, 62 Ia., 699; *Weid-
ner v. Thompson*, 28 N. W. Rep. [Ia.], 422.)

The mere fact that a party is a subsequent mortgagee
does not entitle him to an assignment of a prior mortgage.
There must be some peculiar equity. (*Vandercook v. Cohoes
Savings Institution*, 5 Hun [N. Y.], 641; *Dings v. Parshall*,
7 Hun [N. Y.], 522.)

*R. A. Moore, contra*, cited as to plaintiff's rights to sub-
rogation: *McKenzie v. McKenzie*, 52 Vt., 271; *Cobb v.
Dyer*, 69 Me., 494; *Levy v. Martin*, 48 Wis., 198; *Blod-
gett v. Hitt*, 29 Wis., 169; *Crippen v. Chappel*, 35 Kan.,
495; Harris, Subrogation, secs. 811, 816; *Betts v. Sims*, 35
Neb., 840; *Cheesebrough v. Millard*, 1 Johns. Ch. [N. Y.],
412; *Everston v. Central Bank of Kansas*, 6 Pac. Rep.
[Kan.], 611.)

*Marston & Nevius,.* also for appellee.

RAGAN, C.

From the transcript of the record and the briefs of counsel we understand the facts in this case to be substantially these: On the 15th of June, 1887, William Winters became indebted to one R. A. Moore, and as an evidence of such indebtedness executed and delivered to Moore on said date two notes of $700, each due respectively on the 15th days of June, 1888 and 1889, and secured said debt by a mortgage upon certain real estate. On the 30th day of April, 1888, Winters also became indebted to Grommes & Ullrich in the sum of $3,829.76, and as an evidence of said debt gave to them a series of notes, the last two of which were for $600 and $429.76, respectively, and due October 31 and November 30, 1888. To secure this debt Winters executed to Grommes & Ullrich a mortgage upon the same real estate which he had previously pledged to Moore; the Grommes & Ullrich mortgage became a second lien upon the property, the incumbrance of Moore being a first lien. Winters subsequently paid all the mortgage debt owing to Grommes & Ullrich except the aforesaid last two notes of the series. In June, 1889, one John M. Lay, resided in the city of Kearney, Nebraska, and was in the habit of taking applications of persons desiring to borrow money and of referring such applications to one W. B. Rice, who, if the security proved acceptable, would make the loan applied for. About this date one E. B. Jones, an attorney at law at Kearney, seems to have had in his possession for collection the Moore mortgage, at least he was then pressing Winters for its payment. Lay, learning of this fact, took Winters' application for a loan of $1,300, to be secured by a first mortgage on the premises already mortgaged by Winters to Moore, such loan to be used for the purpose of paying the Moore mortgage. June

1, 1889, Rice accepted Winter's application and loaned him
$1,300, taking his note therefor, secured by a mortgage on
the same premises mortgaged by Winters to Moore, and
with the $1,300 the Moore mortgage was paid off and by
Moore duly discharged of record on the 6th of June, 1889.
About the same date said Jones released and discharged on
the margin of the record where it was recorded the Grommes
& Ullrich mortgage, or attempted to do so.   It seems also
that an abstract of the title of the real estate mortgaged was
furnished to Rice before he parted with the money loaned
to Winters, and that this abstract contained a notation of
the abstracter that the Grommes & Ullrich mortgage had
been released on the margin of the record where recorded.
Rice brought this suit in equity in the district court of
Buffalo county to foreclose the mortgage given him by
Winters on the 1st of June, 1889, prayed for an account-
ing of the amount due him on said mortgage from Winters,
and that he might be given a first lien upon the real estate
described in said mortgage to secure the payment of the
amount found due.   Winters was made a party defendant
to this action, but his connection with the case need not be
further noticed.   Grommes & Ullrich were made or became
parties to the suit, and filed an answer in the nature of a
cross-petition, setting out the execution and delivery to them
of the mortgage, above mentioned, by Winters; that the
last two notes which the mortgage was given to secure,
namely, the notes for $600 and $429.76, with interest, re-
mained past due and wholly unpaid; they prayed for an
accounting of the amount due them from Winters, and that
they be given a first lien upon said mortgaged premises for
its payment.   To this answer and cross-petition of Grommes
& Ullrich, Rice replied: (1) That the Grommes & Ullrich
mortgage had been fully paid and that there was nothing
due thereon; (2) that it had been duly released and dis-
charged of record by one E. B. Jones, acting as the agent
and attorney for Grommes & Ullrich; (3) the execution of

the mortgage of the 15th of June, 1887, by Winters to Moore; that the mortgage he, Rice, sought to foreclose in this action was made for the purpose of and the proceeds used in paying off this Moore mortgage; and he prayed as in his petition he had already, and further, that he might be subrogated to the lien which Moore held against the premises by virtue of the mortgage which Winters had given him thereon, and which had been paid by the proceeds of the mortgage now sought to be foreclosed. The district court made, among others, the following special findings:

"The court further finds that one E. B. Jones, an attorney at law, undertook to release the security mortgage of Grommes & Ullrich by a release entered upon the margin of the record, but that the said Jones undertook to release said mortgage without first obtaining authority therefor, and that said Jones never was authorized by the said defendants, Grommes & Ullrich, to release said mortgage, and that said mortgage was never released, and has been at all times since the recording thereof, and now is, a valid and subsisting mortgage lien against said premises; that there is due to the said defendants Grommes & Ullrich, from the said defendant William Winters, upon their mortgage the sum of $1,455.39, with interest thereon at the rate of eight per cent per annum from this date, and that the same is a valid and second mortgage lien against said premises.

"The court further finds that the proceeds obtained from the mortgage given by the said defendant Winters to the said plaintiff Rice were used to pay off and obtain a release and discharge of the mortgage executed by the said defendant William Winters to the said R. A. Moore.

"The court further finds that there is due to the said plaintiff Rice from the said defendant William Winters upon his said mortgage the sum of $1,600.65, with interest thereon from this date at the rate of ten per cent per annum; and the court finds as a matter of law that the plaint-

iff is, by reason of the facts found above, entitled to be subrogated to the lien of the mortgage so as aforesaid executed by the said William Winters to the said R. A. Moore, and that the plaintiff's lien is accordingly prior and superior to the lien of the said Grommes & Ullrich, and is a valid first mortgage lien against said premises."

To reverse this decree Grommes & Ullrich have appealed.

1. The bill of exceptions in this case was settled by the clerk of the district court of Buffalo county in pursuance of a written stipulation that he might do so, signed by the counsel for the parties to this action; but said stipulation does not recite that what purports to be is in fact the correct bill of exceptions in the case. The mere stipulation of counsel in a case that the clerk of the court may sign and allow a bill of exceptions is not sufficient to confer authority upon him to do so. To confer authority upon the clerk of a district court to sign and allow a bill of exceptions it must appear that the judge is dead, or that he is prevented by sickness, or absence from his district, from signing and allowing the bill; or the parties to the litigation, or their counsel, must agree upon the bill of exceptions and attach thereto their written stipulation to that effect. (*Scott v. Spencer*, 42 Neb., 632.) We are therefore precluded from looking into the evidence which accompanies the record of this case.

2. The sole question remaining is whether the pleadings in the case support the finding and decree of the district court. Had the finding of the district court been a general one, then it is clear that a decree based on such finding would have found ample support in the pleadings, and been conclusive upon this court; but the court has found specially that the Grommes & Ullrich mortgage was never released, that it is a valid and subsisting lien upon the premises, and as it stands of record, superior to the mortgage lien of Rice; but the learned court concluded as a matter

of law that solely because the Moore mortgage, which was a lien upon the premises superior to the mortgage of Grommes & Ullrich, was paid off and discharged with the money which the mortgage of Rice was given to secure, therefore Rice was entitled to be subrogated to the lien which Moore held against the premises by virtue of his mortgage thereon. Is this conclusion of law of the learned district court correct? The proposition may be thus stated: A owns real estate on which B has a first and C a second mortgage. D loans A money to pay off B's mortgage. A agrees to and does secure D's loan by an apparent first mortgage on the real estate. The loan made by D is used in paying off the mortgage of B, and he releases the same. When the mortgage of A to D is delivered, the mortgage records show a marginal release of C's mortgage signed "C, by J." It turns out that C's mortgage has never been paid, and was released by J without authority. Is D entitled to be subrogated to the lien B held, by virtue of his mortgage, against the real estate? There is some conflict in the authorities.

In *Emmert v. Thompson*, 52 N. W. Rep. [Minn.], 31, it was held: "Where one loans money upon real estate security for the express purpose of paying off and discharging liens or incumbrances on the same property, expecting and believing, in good faith, that his security will, of record, be substituted in fact in place of that which he discharges, he is not a volunteer, a stranger, or an intermeddler, nor is the original debt or lien or incumbrance considered extinguished, if justice requires that it should be kept alive for the benefit of the person advancing the money." The facts in this case were very much like those in the case at bar, and the court answered the question we have propounded above in the affirmative. There are other authorities of eminent respectability which by their decisions have given the same answer to the question; but we are persuaded that the decided weight of authority affords a negative answer to the question.

Rice v. Winters.

In *South Omaha Nat. Bank v. Wright*, 45 Neb., 23, this
court said : " The doctrine of subrogation is not adminis-
tered by courts of equity as a legal right, but the principle
is applied to subserve the ends of justice, and to do equity
in the particular case under consideration.   It does not rest
on contract, and no general rule can be laid down which
will afford a test in all cases for its application.   Whether
the doctrine is applicable to any particular case depends
upon the peculiar facts and circumstances of such case."

In the article entitled "Subrogation," 24 Am. & Eng.
Ency. of Law, at page 281, the authorities are collated,
and the result of their holding is thus stated : "One who
advances money to pay the debt of another, in the absence
of agreement, express or implied, for subrogation, will not
be entitled to succeed to the rights and remedies of the
creditor so paid, unless there is some obligation, interest, or
right, legal or equitable, on the part of such person in re-
spect of the matter concerning which the advance is made,
as otherwise he is a stranger, a volunteer, an intermeddler,
to whom the equitable right of subrogation is never ac-
corded."

In *Fort Dodge Building & Loan Association v. Scott*, 53
N. W. Rep., 283, the supreme court of Iowa said : "One
who loans money to satisfy several mortgages on property,
and takes another mortgage on the property, without exam-
ining the records, and relying merely on an abstract not
entirely up to date, which fails to notice the rendition of a
recent judgment, is not entitled to subrogation under said
mortgages to rights paramount to the judgment."

In *Kitchell v. Mudgett*, 37 Mich., 81, it was said : "K.
paid off and discharged the first two out of three mort-
gages on certain property, and then took a new mortgage
for the amount paid.   Held that this was subsequent to
the one left unpaid, and that K. was not entitled to be sub-
rogated to the rights of the first two mortgagees."

In *Watson v. Wilcox*, 39 Wis., 643, that court held :

"One who, having no interest to protect, voluntarily loans money to a mortgagor for the purpose of satisfying and canceling the mortgage, taking a new mortgage for his own security, cannot have the former mortgage revived and himself subrogated to the rights of the mortgagee therein." Ryan, C. J., speaking for the court, said: "Before the appellant took his own mortgage from George and Harriet Harvey, he was a stranger to the title, and had no connection with the mortgage debt due to Sarah Ann Hodson. His action in the premises was voluntary. He first proposed to purchase the Hodson mortgage, but subsequently abandoned that intention and advanced the amount due upon it for the Harveys, for the express purpose of satisfying and canceling the Hodson mortgage. This was done. The appellant thereupon took a new mortgage for his own security. It is difficult to see how the doctrine of subrogation can aid him."

In *Sandford v. McLean*, 3 Paige Ch. [N. Y.], 116, the chancellor, speaking to the point under consideration, said: "It is only in cases where the person advancing money to pay the debt of a third party stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor, as a matter of course, without any agreement to that effect."

In *Ætna Life Ins. Co. v. Middleport*, 124 U. S., 534, the supreme court of the United States, discussing the doctrine of subrogation, held: (1) That the person seeking its benefit must have paid a debt due to a third party before he can be substituted to that party's rights; and (2) that in doing this he must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in cases of sureties, prior mortgagees, etc. The right is never accorded in equity to one who is a mere volunteer in paying a debt of one person to another.

In *Banta v. Garmo*, 1 Sandf. Ch. [N. Y.], 383, the facts are thus stated in the syllabus: "B. loaned money to G. to pay off a mortgage on the security of a new mortgage on the same lands. The old mortgage was paid off, and a discharge of the same duly executed. W. recovered a judgment against G., which was docketed after the first mortgage, and on which the lands were sold to him by the sheriff, prior to the mortgage to B. This sale was overlooked in B.'s examination of the records for liens. Held that B. was not entitled to be subrogated to the old mortgage, or to set it up in order to give him a lien prior to the judgment and sheriff's sale."

It is argued by counsel for Rice that the facts here make a proper case for the application of the doctrine of subrogation by a court of equity, for the reason that while Moore's mortgage remained unsatisfied Grommes & Ullrich's lien upon the mortgaged premises was subject thereto, and they would not be injured or prejudiced if Rice should be subrogated to the lien which Moore held, as their lien would occupy the same relation to the property after subrogation that it did prior to the satisfaction of the Moore mortgage. In *Bohn Sash & Door Co. v. Case*, 42 Neb., 281, a mortgage lien existed against an owner's real estate. He entered into a contract with B. to furnish certain labor and material and erect for him certain improvements on said real estate. B. complied with his contract and furnished labor and material to a considerable amount. After B. had furnished the labor and material the owner procured a loan from C. with which to pay off and discharge the mortgage on his real estate, agreeing to secure such loan by a first mortgage. C. made the loan to the owner and the latter executed to him a mortgage, which was duly recorded, and the prior mortgages were released and discharged of record. The owner not having paid for the labor and material furnished by B., the latter brought suit to obtain a lien against the property

38

under the mechanic's lien statute. C. was made a party to the action and asked the foreclosure of his mortgage, and sought to be subrogated to the liens held by the mortgagees whose mortgages had been paid and discharged with the proceeds of C.'s loan made to the real estate owner. It was urged in that case as a reason why the doctrine of subrogation should be applied that B.'s lien for labor and materials, when the same were furnished, was subject to the then existing mortgages on the real estate, and that he would not be prejudiced by allowing C. to be subrogated to the liens of the mortgagees whose mortgages he had discharged. The district court adopted this view, but this court on appeal reversed the decree of the district court, and held that C. was not entitled, under the facts, to subrogation. The fact that a subsequent mortgagee's lien will occupy the same relation to the property, if one who has advanced money, secured by a mortgage on the real estate, to pay off the prior mortgage is subrogated to the rights of the holders of such mortgage, affords no reason why equity should permit the party so advancing the money to be subrogated to the rights of the holder of the first mortgage. When the Moore mortgage was voluntarily paid off and discharged the mortgages of Grommes & Ullrich became at once a first lien upon the mortgaged premises, and they thereby acquired the legal right to hold and enforce said lien as a first lien against the mortgaged premises. This right and lien were property, and the mere fact that the money which Rice's mortgage secures was used to pay off and discharge the Moore mortgage affords no reason, not the slightest, why a court of equity should deprive Grommes & Ullrich of the legal right which they had acquired by the voluntary act of Rice and Moore. Neither Grommes nor Ullrich said or did anything, or omitted to say or do anything, which caused Rice to make this loan and pay off the Moore mortgage, and the saying or doing, or omitting to say or do, which estops Grommes

& Ullrich from asserting the lien which they have acquired against this property by operation of law in consequence of the release of the Moore mortgage. What right has a court of equity, even under the guise and in the name of subrogation, to deprive Grommes & Ullrich of the vested rights which they have acquired against this property, simply because to do so would be a benefit to Rice? Courts of equity apply the doctrine of subrogation to subserve the ends of justice and to do equity in the particular case under consideration. Would it be doing justice in this case to deprive Grommes & Ullrich of the lien they have acquired against this property by operation of law resulting from the voluntary act of Rice and Moore and without the consent, request, knowledge, or solicitation of Grommes & Ullrich? We confess that to our minds to do this would be to do injustice, and furthermore, it would be using the powers of a court of equity to strike down a legal right, and deprive a citizen of his property. Equity follows the law, it does not thwart it. It enforces and gives effect to the legal rights of parties when the law is powerless to afford a remedy. It does not take away these legal rights.

The second argument of counsel for Rice in support of the decree is that the mortgage records were not in fact in the condition they appeared to be; that is, as we understand it, that the record in which the Grommes & Ullrich mortgage was recorded showed on its margin a release signed by one Jones, and that the abstract of title made of this property, and on which Rice acted in making this loan, recited that the Grommes & Ullrich mortgage had been released on the margin of the record where it was recorded. In other words, that Rice in making this loan acted at a disadvantage and under a mistake ; but the mistake of Rice, whether of law or fact, was the result of his own negligence. He was bound to know the law, and if the record showed that the Grommes & Ullrich mortgage had been released by Jones, he was bound to know whether Jones had authority

to execute that release. If the abstract had recited that the Grommes & Ullrich mortgage had been released and it had turned out that in fact no release had ever been made or attempted to be made, then he would have acted under a mistake of fact; but if he suffered an injury from acting on such mistake, the injury would have still been the result of his own negligence. An intending purchaser or mortgagee of real estate relies and acts upon the recitals of an abstract made of the title to such real estate at his peril. In *Fort Dodge Building & Loan Association v. Scott, supra,* the court, speaking to this point, said: "The only question in the case is whether the plaintiff is entitled to have the satisfaction of the Simmons mortgage set aside, and that he be subrogated to all the rights of Simmons. It seems to us that he is not entitled to such relief. The plaintiff made the loan to Lord for the express purpose of paying the Simmons mortgage. It was well understood that the plaintiff was to accept a new mortgage, and plaintiff got all he bargained for. There was no mistake, except that the plaintiff failed to exercise the diligence required in the examination of the records, and therefore failed to discover the existence of the judgment and the sale thereunder. No one can be blamed, but he must suffer loss, simply because he was negligent. There is no principle that will allow him to take advantage of that to the injury of the diligent." In *Kitchell v. Mudgett, supra,* the supreme court of Michigan, speaking to the same point, said: "It is said, with great show of reason, that complainant would never have taken up those mortgages had she not supposed she was to have a first lien, for the land was then worth only about the amount of the three mortgages. Now this may be true, and still it may be equally true that if she has taken a mortgage negligently on land covered by another she can have no relief. Now complainant was notified by the record and by the Phibbs mortgage that Mrs. Mudgett also held one on the same lands, yet it is not claimed that she

required Mrs. Mudgett to release hers or to postpone the lien. How can the court know that Mrs. Mudgett would have consented to release or postpone if it had been required of her? And how can the court compel her to do that which, with competent authority to assent to or reject, she might perhaps at the time have rejected?" And in *Banta v. Garmo, supra,* the assistant vice-chancellor, speaking to the question under consideration, said: "A further argument is made in behalf of the complainant, on the ground of mistake in canceling the prior mortgage. This is not strictly the fact, as that act was done intentionally, and the mortgagee in that mortgage is content. The mistake consisted in the belief that the complainant was acquiring an unincumbered title by his mortgage. This kind of mistake is of frequent occurrence, but I never heard of an instance where the suffering lender was permitted to trace back his money into the hands of a stranger who had received it in discharge of an elder lien than the one newly discovered, and thereupon to set up such stranger's lien to overreach the intervening incumbrance. * * * No case can be found where a third person, after voluntarily and intentionally discharging a lien in which he had no prior interest, and on the faith of another security, has been permitted, as against other incumbrancers, to revive such lien on ascertaining that his own security was worthless." In the case at bar Rice knew, and was bound to know, when he loaned Winters the money to pay off the Moore mortgage, that Grommes & Ullrich had mortgage liens upon this real estate, and the very moment that the Moore mortgage was satisfied of·record that the Grommes & Ullrich mortgage would become a first lien upon the premises. Had he exercised ordinary care and diligence he would have secured from Grommes & Ullrich a valid release and discharge of their mortgage before he advanced the money and paid off and allowed to be satisfied the Moore mortgage. If he has suffered loss or shall suffer

loss, he has no one to blame but himself, and a court of equity will not apply the doctrine of subrogation to a case, where to do so would be to deprive one party of a legal right and at the same time reward the other party for his negligence.

The decree, in so far as it postpones the lien of Grommes & Ullrich to that of Rice, is reversed, the cause remanded to the district court with instructions to enter a decree giving Grommes & Ullrich a first lien upon the mortgaged premises for the amount found due them by the district court, and give to Rice a second lien upon the premises for the amount found due him by the court.

REVERSED AND REMANDED.