GEORGE A. HOAGLAND & COMPANY, APPELLEE, V. WILLIAM C. DECKER ET AL., APPELLEES: PRUDENTIAL INSURANCE COMPANY, APPELLANT.

FILED MARCH 12, 1929. No. 26266.

*T. B. Dysart, N. M. York* and *Stanley Cheff*, for appellant.

*Cook & Cook, W. A. Stewart* and *D. E. Harper, contra.*

Heard before GOSS, C. J., ROSE, DEAN, EBERLY and DAY, JJ., and BEGLEY and RAPER, District Judges.

RAPER, District Judge.

William C. Decker purchased and took possession of a half section of land in Dawson county in late summer of 1924, under an executory contract, and in October or November 1924 began the erection of a dwelling and other buildings. He received a deed to the farm in May 1925. At the time he purchased this land it was incumbered by a mortgage to the Union Central Life Insurance Company for the sum of $7,500, which bore 7 per cent. interest, and due April 1, 1931. About the time he received his deed he applied to the Prudential Insurance Company, appellant, for a loan on the land to take up the Union Central mortgage. This new loan was to bear interest at $5\frac{1}{2}$ per cent. and mature June 1, 1935. While the application for the loan was pending, appellant's agent told Mr. Decker that the new mortgage would have to be a first lien, and Mr. Decker agreed to it. The appellant's agents were informed that buildings were being erected, and that laborers and materialmen might have liens for labor and material furnished for such buildings, and it requested of Mr. Decker that waiver of those liens be furnished to appellant before the loan was closed and money paid. Decker did not secure the waiver. By some mischance, those waivers were not obtained, and that fact was overlooked when appellant paid its money on the prior mortgage. The appellant's mortgage was dated May 16, 1925, acknowledged May 23,

1925, and delivered and was recorded June 19, 1925. Pursuant to the arrangement and understanding with Mr. Decker, on June 22, 1925, appellant paid to the Union Central Life Insurance Company the amount due on its mortgage, and took a release of that mortgage, which release was recorded July 25, 1925. The testimony clearly discloses that it was the intention of the appellant and Mr. Decker that this new loan and mortgage was to take the place of the mortgage to the Union Central Life Insurance Company as a first lien on the land, and that appellant paid off the first mortgage with the expectation and belief that it was to get a first lien on the land and with that end in view.

The plaintiff, George A. Hoagland & Company, pursuant to oral agreement with Decker, between November 10, 1924, and April 14, 1926, furnished building material for the erection of the buildings on the premises, and N. Nelson, a carpenter, performed labor on the buildings during practically the same period, and George A. Hoagland & Company and Nelson each filed lien within the time provided by law for the amount of their respective claims. In October, 1926, George A. Hoagland & Company began this action to foreclose its lien, claiming first lien on the land, and making William C. Decker and his wife and N. Nelson and the appellant, with other parties, defendants. Nelson filed cross-petition asking foreclosure of his lien, and the appellant by cross-petition alleged the payment of certain taxes on the land to protect its mortgage, and pleaded the facts as above herein set out as to payment of the Union Central Life Insurance Company, and asking its mortgage be subrogated to the lien of the Union Central Life Insurance Company, and, because of a failure of the maker to pay interest and taxes, declared the whole sum due on its note and mortgage as authorized by the terms of the mortgage, and asked foreclosure and to be given first lien. Issues were joined on these various claims and trial had. The district court in its decree foreclosing each of said liens gave appellant a first lien for the

taxes paid, and gave George A. Hoagland & Company and N. Nelson a second lien of equal priority, and decreed appellant's mortgage as third lien. From that decree the Prudential Insurance Company appeals solely on that part of the decree which gave appellant's mortgage third lien instead of priority over the plaintiff and N. Nelson.

In *Cheesebrough v. Millard,* 1 Johns. Ch. (N. Y.) 409, Chancellor Kent said the right of subrogation is founded upon natural justice and is recognized in every cultivated system of jurisprudence.

"Subrogation in its broadest sense is the substitution of one person in place of another with reference to a lawful claim or right." 25 R. C. L. 1311, sec. 1. And it has been said that no doctrine of equity jurisprudence is more beneficent in its operation than is subrogation, and perhaps none stands in higher favor.

Courts recognize two kinds of subrogation, legal and conventional, and sometimes when the term is used without qualification legal subrogation is meant and may thus give rise to a misunderstanding of some of the court's holdings. The word "conventional" is defined as growing out of or established by convention; that is, an agreement or mutual engagement between persons. As the name implies, conventional subrogation is founded upon some understanding or agreement, express or implied, and without which there is no "convention." Legal subrogation follows as a matter of legal right without any agreement.

Judge Good, in *State v. Holdrege State Bank,* 110 Neb. 814, at page 819, gives a concise and comprehensive statement of these distinctions: "Conventional subrogation arises where one pays the debt of another under an agreement, existing at the time of the payment, with either the debtor or the creditor, that the person paying shall be subrogated to the liens existing as security for the debt. It differs from legal subrogation which exists only in favor of the surety for the payment of the debt, or one who is compelled to pay the debt to protect his own rights. Conventional subrogation arises by reason of either an express

or an implied agreement between the third person paying the debt and either the debtor or creditor." He cites, in support, a large number of cases. In a still later case, *Prudential Ins. Co. v. Qualset*, 116 Neb. 706, this court held: "Generally, where one pays or advances money to pay a mortgage debt in whole or in part with the under-standing that he is to have the benefit of the mortgage, he becomes a holder of the lien by subrogation." See, also, *Meeker v. Larsen*, 65 Neb. 158; *Frederick v. Gehling*, 92 Neb. 204; *Bohn Sash & Door Co. v. Case*, 42 Neb. 281.

Now, applying this principle of conventional subrogation to the facts in this case, there appears no reason why the appellant should not be subrogated to the lien of the Union Central Life Insurance Company's mortgage. There was an agreement and full understanding upon which appellant relied that it was getting a first lien in the place and stead of the old mortgage. The new mortgage was for the same amount as the old one; it was to the advantage of the mortgagor in that the new loan materially reduced the rate of interest, and the mere fact that appellant knew there was material and labor being furnished for buildings and asked Decker to procure release from the persons who were furnishing material and labor for waiver of liens, which Decker failed to do, is not such negligence as bars appellant from the right of subrogation. The plaintiff and Mr. Nelson were not placed in any worse position. They were in fact bettered somewhat, because their debtor, Mr. Decker, was relieved of a considerable sum in payment of interest. Decker defaulted on the interest, and if the new mortgage had not been given the interest charge would have been greater under the old mortgage. When they began to supply the means of erecting the buildings they knew there was a mortgage of $7,500 on the farm, and that their claims would be subordinate to that mortgage. The new mortgage does not change or lessen their security or prejudice them in any way.

Appellees insist that, if subrogation is granted in this case, *Bohn Sash & Door Co. v. Case*, 42 Neb. 281, and *Rice*

*v. Winters*, 45 Neb. 517, must be overruled. We do not so understand the holdings in those cases. It does not appear in the *Rice* case that there was an agreement with the debtor to give a first lien by the new mortgage to take the place of the older mortgage, nor in the *Rice* case or *Bohn* case that the persons who advanced the money to take up the prior valid mortgages were relying upon their new securities to take the place of the old ones. Commissioner Ryan in the *Bohn* case, page 298, says: "It is not enough to entitle to subrogation that with the proceeds of the Myers mortgage prior mortgages have been discharged. 'The real question in all such cases is whether the payment made by the stranger was a loan to the debtor through a mere desire to aid him or whether it was made with the expectation of being substituted in the place of a creditor. If the former is the case, he is not entitled to subrogation; if the latter, he is.'" In other words, they paid off the first liens without the intention to hold their right to succeed to the lien of the prior mortgages, and without the agreement of the debtor that the new mortgages were to be a first and prior lien. The facts in those cases were somewhat different from the case at bar. Appellees also cite *Webber v. Frye*, 199 Ia. 448. The facts in that case, in the opinion of that court, were not sufficient to invoke the rule of subrogation for the party because of inexcusable negligence, and that he did not intend to hold right to be subrogated to the original lien; but in that case the court held: "One furnishing funds for payment of mortgages and accepting new mortgage is subrogated to rights of mortgagee whose mortgage he pays, only if he acts without intent to waive or relinquish the lien of mortgage so paid." That is the equitable principle adopted in the Nebraska cases above cited.

The district court did not have the last case in this state before it when the trial was had. That case, *Prudential Ins. Co. v. Qualset, supra*, is the last expression of this court; it states the correct equitable rule, and is and should be followed in the case at bar.

Under the facts shown in this case, the appellant is entitled to the first lien on the premises by virtue of its mortgage, and it is so decreed, and the decree of the district court is so modified in that respect, and the cause is remanded to the trial court, with direction to modify its decree as above stated, and award appellant a first lien for taxes paid and for the amount of its mortgage with interest, and to award the plaintiff and N. Nelson, a second lien, they to prorate therein, and the decree as so modified is, in all other things affirmed.

AFFIRMED AS MODIFIED.