STATE OF NEBRASKA, APPELLANT, V. HOLDREGE STATE BANK ET AL., APPELLEES.

FILED OCTOBER 1, 1923. No. 23443.

1. **Appeal:** PROCEDURE. Where the district court has entered an order allowing a claim against a receiver of an insolvent state bank and directing payment of the claim from the depositors' guaranty fund, and, on application by the state for a vacation of such order and for permission to make defense to the claim, enters an order setting the hearing on the application upon a future date, also by the order suspends the first order until the further action of the court, and, on the subsequent hearing, announces that the hearing will be on the merits of the claim, and at such hearing the court and litigants treat the first order as though it had been vacated, and try the merits of the claim, this court will, on appeal, disregard any technical question of procedure and treat the appeal as on the merits of the claim presented for allowance.

2. **Subrogation:** BANKS AND BANKING: GUARANTY FUND. One who, pursuant to a contract with a failing state bank, pays the claims of its depositors is not thereby subrogated to the rights of depositors as against the depositors' guaranty fund, notwithstanding that the contract may so provide.

APPEAL from the district court for Phelps county: WILLIAM A. DILWORTH, JUDGE. *Reversed.*

*O. S. Spillman* and *George W. Ayres,* for appellant.

*Stout, Rose, Wells & Martin, Bernard McNeny* and *G. Norberg, contra.*

*Stiner & Boslaugh, amici curiæ.*

Heard before LETTON, DEAN, DAY and GOOD, JJ.

GOOD, J.

The state of Nebraska has appealed from orders of the district court, allowing a claim for $187,815.80 against the receiver of the Holdrege State Bank and in favor of the Citizens State Bank of Holdrege, and directing the payment of the claim from the depositors' guaranty fund. For convenience, the Citizens State Bank will hereafter be referred to as the claimant and the Holdrege State Bank simply as the Holdrege bank.

At the outset, it is contended by the claimant that the appeal is from a judgment denying an application to vacate an order or judgment rendered at a previous term of the district court, and that the question of the merits of claimant's right to the allowance of its claim and the payment thereof from the guaranty fund is not before the court. On December 18, 1922, the claim was presented to and allowed by the district court without objection. In February, 1923, the state filed an application to set aside the orders and for permission to make defense to the allowance and payment of the claim from the depositors' guaranty fund. On the 13th of February, 1923, the court entered an order directing that on the 5th of March, 1923, a hearing be had on this application, and directing that the orders entered on December 18, 1922, be suspended until the further action of the court. It may here be observed that the record does not disclose when the term of court, at which the claim was allowed, adjourned, and whether the subsequent proceedings were at the same or at a subsequent term of court. Issues were joined by the state, the claimant and others, as interveners, upon the merits of the claim and a hearing was begun on March 5 and concluded on March 16, 1923. On the hearing there seems to have been some doubt in the minds of the counsel

as to whether the orders entered December 18 had been vacated, and whether the hearing was upon the merits of the claim.   Counsel for the state made inquiry of the court and the court made this statement:

"This proceeding will go into the merits of the proposition, just as though it was an application for the order which was first made here.   This is in order that all concerned will have a full and complete investigation of the matter. * * * So far as any evidence, except on the merits of the case as to whether there was a claim or whether there was not, that is what is before the court now, and I think we will save time by so considering it in that way.   We will go right to the merits of the case, as to whether the order should have been made or whether it should not."

Upon further inquiry by counsel as to whether this was a hearing upon the claim filed by the claimant, and as to whether or not it should be allowed, as if no order had been made, the court answered:  "Yes; that is the position of the court."   The hearing proceeded and evidence was taken upon the merits, and at the close of the hearing the court rendered a decision upon the merits of the case and entered it as of that date.   The claimant now takes the position that the orders of December 18 were never vacated or set aside, and that the question as to the merits of the allowance of the claim is not before the court.   It is true that the order entered suspended and did not technically vacate the orders made on December 18, 1922, but it was treated by the court and by counsel for the respective parties as though the first orders had been vacated, and the hearing was upon the merits of the claim.   Under these circumstances, this court will disregard any technical question as to procedure and treat the matter as did the trial court and determine it upon its merits.

The question for determination is whether the claimant, having paid the depositors of the Holdrege bank the amount of their deposits, pursuant to an agreement between the two banks, is entitled to be subrogated to the rights of

the depositors whose claims were paid. There is practically no conflict in the evidence. The record shows that on the 23d day of May, 1921, the Holdrege bank was insolvent, and that its affairs would have been placed in the hands of a receiver unless some satisfactory arrangement had been made for the payment of its depositors. On that date the Holdrege bank entered into a written contract with the claimant, by the terms of which the latter guaranteed and agreed to pay the claims of depositors of the Holdrege bank, amounting in the aggregate to $338,695.87. The Holdrege bank, as a part of the agreement, transferred to the claimant a part of its bills payable, amounting to $137,-162.40, and also executed a promissory note to the claimant for $209,150.38, and this note was secured by the pledge of all of its other assets, including the remaining bills receivable, its furniture, fixtures, banking house and other real estate, and all of its assets of every name and nature. The contract provided that the claimant should take over and guarantee the payment of the depositors of the Holdrege bank in the amount due such depositors at the close of business on May 22, 1921, in the amount above stated. The contract further provided:

"Both parties hereto, recognizing that under section 53, article 16, title V, chapter 190, of the Laws of 1919, that the depositors of the Holdrege State Bank have a lien upon all its assets for the payment of such deposits, it is the declared intention of both parties hereto that the Citizens State Bank shall become subrogated to all the rights of deposits taken over and guaranteed, and in consideration of the guaranty and payment by the Citizens State Bank of all the depositors of the Holdrege State Bank in the amount set forth above, the Holdrege State Bank hereby assigns, delivers, and sets over," etc.

The contract contained this further provision: "It is the general purpose of this contract for the Holdrege State Bank to pledge and assign all of its assets of every kind and nature to the Citizens State Bank, to protect the Citizens State Bank in the guaranty of the deposits of the Hol-

drege State Bank. * * * After the Citizens State Bank shall have collected from the total assets of the Holdrege State Bank an amount equal to the sum of $359,195.87, being the amount of the deposits and the bills payable, which are assumed by the Citizens State Bank, with interest from May 23, 1921, the excess of such collateral notes and real estate and other assets taken over is to again become the property of the Holdrege State Bank and is to be reassigned or retransferred to them. This contract is subject to the approval of the department of trade and commerce of the state of Nebraska."

Shortly after its execution, the contract was presented to and received the approval of the department of trade and commerce of the state of Nebraska. After the 22d of May, the Holdrege bank did not reopen for business. The claimant paid the depositors of the Holdrege bank, and, at the time of the filing of its claim, claimant had collected a part only of the assets of the Holdrege bank which it had taken as security. The amount so collected, together with the assets which it purchased outright, aggregated $150,880.07. The excess of the amount paid to depositors by the claimant, over the amount that it had received, was $187,815.80, and it is for this amount that it seeks to have its claim allowed and paid from the guaranty fund.

Immediately after the execution of the contract by the claimant and the Holdrege bank, it was advertised in the local papers as a merger of the two banks, and it is now urged on behalf of the state that this court should construe the contract as a merger or consolidation of the two banks. Notwithstanding the fact that the banks may have called and advertised it as a merger, the question of whether or not it was a merger must be determined by the terms of the contract. No provision was made for the retirement of the capital stock of the Holdrege bank, nor for the cancelation of its charter. The contract provided for the giving of a note by the Holdrege bank which was to run for a period of six months. It also provided that the surplus remaining after a sufficient amount had been collected to

State v. Holdrege State Bank.

reimburse the claimant for the amount it had paid out, pursuant to the contract, should be returned to the Holdrege bank. The contract did not contemplate the extinguishment of the Holdrege bank. It provided and recognized that it should remain as a corporate entity, with liability upon its obligations and with a right to have surrendered to it any surplus of its assets after the payment of its depositors. Under these circumstances, the contract cannot be construed as a merger or consolidation of the two banks. We think the contract should be viewed as one providing for a voluntary liquidation of certain liabilities of the Holdrege bank, including its liabilities to depositors.

If the claimant is entitled to have its claim allowed and paid from the guaranty fund, such right must arise by reason of its being subrogated to the rights of the depositors of the Holdrege bank. We do not understand that claimant contends that what is ordinarily termed legal subrogation is applicable to the situation established by the record, but rather that its contention is that by the doctrine of conventional subrogation it stands in the shoes of the depositors and can assert all the rights that they could assert if they were claimants, and that the application of this doctrine to the situation arises by virtue of the provisions of the contract between it and the Holdrege bank, together with the approval thereof by the department of trade and commerce.

Conventional subrogation arises where one pays the debt of another under an agreement, existing at the time of the payment, with either the debtor or the creditor, that the person paying shall be subrogated to the liens existing as security for the debt. It differs from legal subrogation which exists only in favor of the surety for the payment of the debt, or one who is compelled to pay the debt to protect his own rights. Conventional subrogation arises by reason of either an express or an implied agreement between the third person paying the debt and either the debtor or creditor. *Seeley v. Bacon*, 34 Atl. (N. J.

Eq.) 139; *Gore v. Brian,* 35 Atl. (N. J. Eq.) 897; *Allen v. Caylor,* 120 Ala. 251, 74 Am. St. Rep. 31; *Home Savings Bank v. Bierstadt,* 168 Ill. 618; 37 Cyc. 367-373; 25 R. C. L. 1325, sec. 11, 1326, sec. 12, 1340, sec. 24. The cases in which the doctrine of conventional subrogation has been applied are numerous, but our attention has not been directed to, nor have we been able to discover, any case where it has been applied in a situation like that existing in this case. It is applicable to cases where the debtor had made an agreement with a third person to pay his debt which was secured by a lien upon his property, or for which his property was pledged, and under such circumstances, if it was so understood or agreed, the person paying would be subrogated to all the rights of the creditor as against the property of the debtor that was in any wise pledged as security; but in the instant case it is sought to have the doctrine applied so as to give the claimant a right against the depositors' guaranty fund. It must be observed, however, that the debtor, with whom the agreement was made, did not own nor have any direct legal interest in or control over the guaranty fund. It had no right or power to pledge it as security for its obligation. The depositors' guaranty fund is created by law for the protection of depositors, and the state is the trustee for the handling and disbursing of the fund. The department of trade and commerce is the state's instrumentality for so managing and disbursing the fund, but the department of trade and commerce has no authority to create any right against that fund and can only pay out the fund upon the conditions prescribed by statute. The approval of the contract by the department of trade and commerce could add nothing to the contract of the parties, so far as creating an obligation against the guaranty fund is concerned. We do not think that the facts and circumstances, as disclosed by the record, create a situation calling for the application of the doctrine of conventional subrogation, except as to assets of the Holdrege bank on which its depositors would have a lien. The claimant was not bound, either legally or morally,

,to enter into any contract for the payment of the depositors of the Holdrege bank. It did so voluntarily. For its relief it must look to the party with whom it contracted and the property pledged by the contract.

There is another reason why we think the claimant should not be allowed to recover against the guaranty fund. When the contract is closely analyzed, it does not show there was any intent by the parties to undertake to create any liability against the depositors' guaranty fund. The provision of the contract relied upon is:

"Both parties hereto, recognizing that under section 53, article 16, title V, chapter 190, of the Laws of 1919, that the depositors of the Holdrege State Bank have a lien upon all its assets for the payment of such deposits, it is the declared intention of both parties hereto that the Citizens State Bank shall become subrogated to all the rights of deposits taken over and guaranteed, and in consideration of the guaranty and payment by the Citizens State Bank of all the depositors of the Holdrege State Bank in the amount set forth above, the Holdrege State Bank hereby assigns, delivers, and sets over," etc.

By other provisions of the contract, all of the assets of the Holdrege bank were transferred or pledged for the security of the claimant. The words in the contract, "shall become subrogated to all the rights of deposits taken over and guaranteed," we think clearly contemplate that the rights to which the claimant was to be subrogated were those referred to in the first part of the paragraph, to wit, "a lien upon all its assets for the payment of such deposits," and that nothing which does not come within the description of assets of the bank is included. In no sense can the depositors' guaranty fund be considered an asset of the bank; nor can it be said that the bank holds the provisions of the guaranty fund law as security for its obligations to pay its depositors.

On no theory that we can perceive was the claimant entitled to be subrogated to rights of the depositors as

against the guaranty fund. It follows that the judgment and order of the district court was erroneous and should be reversed.

REVERSED.