ALAN G. EHLERS ET AL., APPELLEES, V. CECIL LEE PERRY, APPELLEE AND CROSS-APPELLANT, STATE OF NEBRASKA, DEPARTMENT OF SOCIAL SERVICES, APPELLEE AND CROSS-APPELLEE, CITY OF LINCOLN, DOING BUSINESS AS LINCOLN GENERAL HOSPITAL, APPELLANT, AND DAN L. MCCORD, INTERVENOR-APPELLEE.

494 N.W.2d 325

Filed January 15, 1993.   No. S-89-1490.

Linda W. Rohman, of Erickson & Sederstrom, P.C., for appellant.

Dan L. McCord for appellee Perry.

Robert M. Spire, Attorney General, Royce N. Harper, and Wynn Clemmer for appellee Department of Social Services.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

The City of Lincoln, doing business as Lincoln General Hospital (LGH), appeals from the judgment of the district court for Seward County in an interpleader action concerning proceeds from settlement of a negligence claim covered by a

policy of automobile liability insurance issued by Battle Creek Mutual Insurance Company to Alan G. Ehlers.

## INTERPLEADER

Nebraska's interpleader statute, Neb. Rev. Stat. § 25-325 (Reissue 1989), states:

> Upon the affidavit of a defendant, before answer in an action upon contract or for the recovery of personal property, that some third party, without collusion with him, has or makes a claim to the subject of the action, and that he is ready to pay or dispose of the same as the court may direct, the court may make an order for the safekeeping, or for the payment, or deposit in court . . . and an order requiring such third party to appear in a reasonable time and maintain or relinquish his claim against the defendant. . . . If such third party appear, he shall be allowed to make himself defendant in the action in lieu of the original defendant, who shall be discharged from all liability to either of the other parties in respect to the subject of the action, upon his compliance with the order of the court for the payment, deposit or delivery thereof.

Interpleader is an equitable proceeding for determination of adverse claims by rival claimants to the same property or fund held by a third person as a stakeholder. See *Klaber v. Maryland Casualty Co.*, 69 F.2d 934 (8th Cir. 1934).

Interpleader is based on the theory that adverse claimants should litigate between or among themselves their conflicting rights or claims to property or a fund, without involving the stakeholder who, disclaiming any interest in the property or fund, has, in good faith, offered to deliver, or has delivered, the property to a court or has deposited the money in the court's registry. See, *Klaber v. Maryland Casualty Co., supra*; *United Benefit Life Insurance Company v. Katz*, 155 F. Supp. 391 (E.D. Pa. 1957).

The function or purpose of interpleader is to protect a disinterested person, as a stakeholder, against conflicting claims to property or a fund and to avoid the stakeholder's exposure to multiple liability or a multiplicity of suits. *Texas v.*

*Florida*, 306 U.S. 398, 59 S. Ct. 563, 83 L. Ed. 817 (1939); *National Fire Ins. Co. v. Sanders*, 38 F.2d 212 (5th Cir. 1930); *First State Bank v. Citizens State Bank*, 10 F.R.D. 424 (D. Neb. 1950); *United Benefit Life Insurance Company v. Katz, supra*.

The equitable remedy of interpleader requires that (1) the same property or fund is subject to adverse titles or rival claims by at least two parties to the proceedings; (2) all adverse titles or rival claims must be based on or depend on, or be derived from, a common source; (3) the person who seeks relief by interpleader has neither an interest in nor a claim against the subject property or fund and, as a stakeholder, is legally disinterested in claims against the property or fund; (4) the stakeholder must have incurred no independent liability to the claimants; and (5) the stakeholder has delivered the property to a court or offers to deliver the property to a court, deposit the money into the court's registry, or otherwise dispose of the property or fund as the court may direct. See, *Strasser v. Commercial Nat. Bank*, 157 Neb. 570, 60 N.W.2d 672 (1953); *Citizens Nat. Bank of Wisner v. McNamara*, 120 Neb. 252, 231 N.W. 781 (1930); *Farming Corporation v. Bridgeport Bank*, 113 Neb. 323, 202 N.W. 911 (1925).

## STANDARD OF REVIEW

In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, where credible evidence is in conflict on a material issue of fact, an appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

*Chambers-Dobson, Inc. v. Squier*, 238 Neb. 748, 750, 472 N.W.2d 391, 395 (1991). Accord, *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990); *Frenzen v. Taylor*, 232 Neb. 41, 439 N.W.2d 473 (1989); *Hughes v. Enterprise Irrigation Dist.*, 226 Neb. 230, 410 N.W.2d 494 (1987); *Newton v. Brown*, 222 Neb. 605, 386 N.W.2d 424 (1986).

"Regarding a question of law, an appellate court has an obligation to reach a conclusion independent from a trial

court's conclusion in a judgment under review." *Huffman v. Huffman*, 232 Neb. 742, 748, 441 N.W.2d 899, 904 (1989). Accord, *Maack v. School Dist. of Lincoln*, 241 Neb. 847, 491 N.W.2d 341 (1992); *Albee v. Maverick Media, Inc.*, 239 Neb. 60, 474 N.W.2d 238 (1991); *Lutheran Medical Center v. City of Omaha*, 229 Neb. 802, 429 N.W.2d 347 (1988); *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986).

BASIS OF INTERPLEADER ACTION

The facts and documentary evidence were stipulated by the parties.

*Perry's Admission to LGH.*

On May 24, 1987, Cecil Lee Perry was injured while he was a passenger in an automobile that collided with a car driven by Alan G. Ehlers and, on May 24, was admitted to LGH for medical treatment and care. On May 27, Joseph Perry, on behalf of his brother, Cecil Perry, signed LGH's admission form which included: "STATEMENT TO PERMIT PAYMENT OF HOSPITAL AND MEDICAL INSURANCE BENEFITS TO HOSPITAL: . . . I request that payments of authorized benefits be made to the hospital in my behalf." Perry's injuries included a severed spinal cord at the sixth cervical vertebra, resulting in quadriplegia.

*Perry's Application to DSS.*

On June 30, as expressed in the parties' stipulation, "[s]ince Perry is quadriplegic, he signed 'X' on the application for assistance and assignment form" of the Nebraska Department of Social Services (DSS) which contained:

I understand that as a condition of receiving medical assistance all rights to third party payments for medical care and services paid on behalf of myself and any other members of the assistance unit for whom I can legally make an assignment are assigned to the Nebraska Department of Social Services as required by State Law.

I understand that third party payments include any payment owed under a court or administrative agency and payment under an insurance policy. Medicare benefits are not assigned.

Although a signature line was supplied near and below the foregoing and other printed material on page 17 of the DSS application, no signature appeared on page 17 at the place provided. However, opposite the printed direction "SIGN HERE" on page 18, Perry, as acknowledged by the stipulation, made his "X" in the space provided for the "Signature of Applicant."

Neb. Rev. Stat. § 68-1026 (Reissue 1986) provided in pertinent part:

> The application for medical assistance benefits . . . constitutes an automatic assignment of the rights specified in this section to the Department of Social Services effective from the date of eligibility for such benefits. . . .
>
> Pursuant to this section, the applicant or recipient assigns to the department any rights to medical care support available to him or her . . . and any rights to pursue or receive payments from any third party liable to pay for the cost of medical care and services arising out of injury, disease, or disability of the applicant or recipient . . . . Benefits assigned to the department by operation of this section may be directly reimbursable to the department by liable third parties . . . when prior notification of the assignment has been made to the liable third party.

*Events After Perry's Application to DSS.*

Perry was discharged from LGH on July 2. At that time, Perry's unpaid account at LGH reflected charges of $86,308.74. Perry was readmitted to LGH on July 26 and remained hospitalized until his discharge on July 30. The charges for Perry's second admission to LGH totaling $8,098.39 also were unpaid.

Attorney Dan L. McCord, pursuant to a written contingent fee contract dated July 31, undertook representation of Perry for one-third of any recovery on Perry's personal injury claim against Ehlers.

LGH, on August 5, served a "Notice of Hospital Lien" on Battle Creek concerning the charges for Perry's hospitalization from May to July. LGH based its lien on Neb. Rev. Stat. § 52-401 (Reissue 1988), which states in pertinent part:

> Whenever any person shall employ a . . . hospital to perform professional service or services of any nature, in the treatment of or in connection with an injury, and such injured person shall claim damages from the party causing the injury, such . . . hospital . . . shall have a lien upon any sum . . . obtained by settlement or compromise on the amount due for the reasonable value of services necessarily performed . . . . In order to prosecute such lien, it shall be necessary for such physician, nurse, or hospital to serve a written notice upon the person or corporation from whom damages are claimed that such physician, nurse, or hospital claims a lien for such services . . . except that whenever an action is pending in court for the recovery of such damages, it shall be sufficient to file the notice of such lien in the pending action.

On August 17, pursuant to the June 30 application for medical assistance benefits, DSS made the first in a series of payments for Perry's medical expenses. On August 19, Perry was again admitted to LGH, and he was discharged on August 31. Unpaid charges for Perry's third admission to LGH were $21,902.64. Thereafter, in view of his condition, Perry was admitted to Madonna Professional Care Center. On September 3, DSS served on Battle Creek notice of DSS' subrogation interest under Neb. Rev. Stat. § 68-716 (Reissue 1986): "An application for medical assistance benefits shall give a right of subrogation to the Department of Social Services. Subrogation shall include every claim or right which the applicant may have against a third party when such right or claim involves money for medical care. . . ."

*The Interpleader Action.*

In early September 1987, McCord, on behalf of Perry, filed a negligence action against Alan Ehlers. The negligence action was settled with approval of Perry, LGH, and DSS for $100,000, subject to LGH and DSS' resolving their dispute concerning priority of their claims and liens regarding services rendered to Perry. When LGH and DSS were unable to resolve their differences, Battle Creek filed an interpleader action to determine distribution of the $100,000 settlement which Battle

Creek paid into court. Defendants in the interpleader action were Perry, LGH, and DSS, with McCord as an intervenor in the proceedings. The legal interests of Gary Ehlers, Loren Wiemer, and First Insurance as plaintiffs in the interpleader action are undisclosed.

The parties stipulated to the following: McCord, pursuant to his contingent fee contract with Perry for legal services, was entitled to one-third of Perry's recovery resulting from the Ehlers settlement by Battle Creek. LGH had provided Perry with hospital services totaling $116,309. DSS had paid $292,446 in medical expenses other than hospital expenses at LGH for Perry. The parties also stipulated facts bearing on Perry's general damages caused by the automobile accident, for example, Perry's age, education, employment history, permanent injury, and life expectancy.

LGH based its claim on the hospital lien under § 52-401. DSS based its claim on two theories: (1) the assignment specified in § 68-1026, which assignment, according to DSS, became effective and operated from May 1, 1987, determined by DSS to be the date of Perry's eligibility for medical assistance benefits, and (2) the right of subrogation pursuant to § 68-716. Although the date of May 1, 1987, might have some administrative significance for accounting purposes, neither DSS nor the record discloses why or how May 1, 1987, was determined as the date of Perry's eligibility for state benefits or when that determination was made.

On the basis of the stipulations, the court determined that McCord, LGH, and DSS had "compromised their claims and waived their statutory liens, if any, because they knew that the [$100,000] settlement was insufficient to satisfy any one of their individual liens and claims." Further, based on the evidence regarding Perry's injury from the automobile accident, the court found that if Perry's negligence action had gone to trial, Perry would have been awarded $4.85 million. Therefore, in order to arrive at a pro rata distribution of the $100,000 settlement fund, the court divided $100,000 by the amount of the hypothetical award, $4.85 million, resulting in a factor of .020618 applied to the amount of each claim asserted in the interpleader action. On that basis, the court ordered the

following distributions: McCord—$33,333; DSS—$6,030; LGH—$2,399; and Perry—$58,238, the balance of the $100,000 settlement fund after distributions to McCord, DSS, and LGH. Finally, the court concluded that, as the result of Perry's assignment of payments by a third party, DSS was entitled to Perry's distributive share of the $100,000 deposited in court, i.e., $58,238, in addition to DSS' share outright, $6,030.

## ASSIGNMENTS OF ERROR

In this appeal, the parties have stipulated that McCord's attorney fee is no longer an issue, and consequently, they do not contest the ordered distribution of $33,333 from the settlement fund to McCord for his fee. Rather, the appellate disputes involve the balance of the settlement fund, $66,667, remaining after payment of McCord's fee.

LGH asserts that "there was no evidence to support the Court's conclusion that, in stipulating to settlement of Perry's personal injury claim, the parties waived their various liens against and claims to a share of the settlement proceeds" and claims that it had an assignment of the settlement fund as the result of the language in LGH's admission form and that the court erred by finding that Perry's assignment to DSS was superior to LGH's statutory lien under § 52-401. Perry has cross-appealed and, without denying his assignment to DSS, claims that the court erred in its judgment that Perry's assignment precluded his receiving any distribution from the $100,000 settlement fund.

## WAIVER OF CLAIMS

"A waiver is the voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct." *State v. Kennedy*, 224 Neb. 164, 170, 396 N.W.2d 722, 726 (1986). Accord *State v. Clear*, 236 Neb. 648, 463 N.W.2d 581 (1990). See, also, *Stuhr v. Stuhr*, 240 Neb. 239, 481 N.W.2d 212 (1992) (execution of child custody agreement was not irrevocable waiver of parental right to custody).

Although LGH and DSS obviously knew that the $100,000 settlement was insufficient to satisfy their individual claims,

nothing in the record indicates that LGH and DSS voluntarily or intentionally relinquished their claims for payment from the settlement fund. Consequently, we conclude, as a matter of law, that the district court erred in its finding that LGH and DSS had waived their statutory claims. Because the claims remained in effect, the district court should have determined the priority of claims by LGH and DSS and should not have resorted to Perry's hypothetical award as a basis for a pro rata distribution to the parties.

## LIEN V. ASSIGNMENT

A lien is "a right afforded by law to have an obligation satisfied out of particular property." *Dupuy v. Western State Bank*, 221 Neb. 230, 233, 375 N.W.2d 909, 912 (1985). A lien does not displace a prior right or prior equities that are superior. See, *Verschoor v. Miller*, 259 Iowa 170, 143 N.W.2d 385 (1966); *Briley v. Madrid Improvement Co.*, 255 Iowa 388, 122 N.W.2d 824 (1963). On the other hand, an assignment is a transfer vesting in the assignee all the assignor's rights in property which is the subject of the assignment. See *Craig v. Farmers Mut. Ins. Co.*, 239 Neb. 271, 476 N.W.2d 529 (1991). An assignment transfers to an assignee only the rights of the assignor; thus, if the assigned property is subject to a lien, the assignee takes the assigned property subject to the lien. See *State Securities Co. v. Daringer*, 206 Neb. 427, 293 N.W.2d 102 (1980). Unless a transfer by an assignment is a gift, an assignment is effective only when supported by valid consideration. See, *Abraham v. Abraham*, 203 Neb. 384, 279 N.W.2d 85 (1979); *Scott v. First Nat. Bank, Adm.*, 224 Md. 462, 168 A.2d 349 (1961); *Robert S. Pinzur, Ltd. v. The Hartford*, 158 Ill. App. 3d 871, 511 N.E.2d 1281 (1987); *Bank of Cave Spring v. Gold Kist, Inc.*, 173 Ga. App. 679, 327 S.E.2d 800 (1985); *Sheeran v. Sitren*, 168 N.J. Super. 402, 403 A.2d 53 (1979). As DSS points out, consideration for a contract requires either a benefit to the promisor or a detriment to the promisee. See, *Hecker v. Ravenna Bank*, 237 Neb. 810, 468 N.W.2d 88 (1991); *Buckingham v. Wray*, 219 Neb. 807, 366 N.W.2d 753 (1985); *Hasenauer v. Durbin*, 216 Neb. 714, 346 N.W.2d 695 (1984). As in the ordinary case of a contract, an assignment, other than a

gift, requires a benefit to the assignor or a detriment to the assignee.

Although LGH argues that the provision in its admission form, "STATEMENT TO PERMIT PAYMENT OF HOSPITAL AND MEDICAL INSURANCE BENEFITS TO HOSPITAL: . . . I request that payments of authorized benefits be made to the hospital in my behalf," results in Perry's assignment of the $100,000 settlement fund, the particular language in LGH's admission form has but one reasonable meaning: a patient's hospital and medical insurance benefits are payable directly to LGH rather than to the patient. The settlement fund from Perry's automobile accident is not derived from hospital and medical insurance benefits. Consequently, we conclude that the designated language in LGH's admission form is not an assignment of the settlement fund deposited in the interpleader action.

LGH next argues that Perry's assignment to DSS was ineffective because the DSS application lacks Perry's signature at the place internally specified for written assignment of Perry's right to receive payments from a third party. None of the parties disputes that Perry made his "X" at the place provided for an applicant's signature on the last page of the DSS application for medical assistance benefits. Moreover, for trial of the interpleader action, the parties stipulated that Perry "signed 'X' on the application for assistance." A signature is "whatever mark, symbol or device one may choose to employ as representative of himself [or herself]." *Griffith v. Bonawitz*, 73 Neb. 622, 627, 103 N.W. 327, 329 (1905). A stipulation, entered by parties to a proceeding or by their attorneys within the scope of authority for representation of the parties, establishes the fact or facts stipulated and binds the parties in the proceeding. See *White v. Mertens*, 225 Neb. 241, 245, 404 N.W.2d 410, 413 (1987): "Parties are bound by stipulations voluntarily made and are granted relief therefrom only under exceptional circumstances" (citing *State v. Wells*, 197 Neb. 584, 249 N.W.2d 904 (1977)). See, also, *State v. Davis*, 224 Neb. 205, 397 N.W.2d 41 (1986); *Martin v. Martin*, 188 Neb. 393, 197 N.W.2d 388 (1972). Since the stipulation is binding on the parties in the present action and appeal, LGH is unable to

contradict the stipulated fact that Perry signed the DSS application. Because the application was signed by Perry, resulting in a statutory assignment pursuant to § 68-1026, we reject LGH's contention that Perry's application was formally invalid due to the absence of his signature at the particular place provided beneath the printed assignment contained in the DSS application.

Therefore, as a question presented for the first time to this court, the key question in determining priority of the interests acquired by LGH and DSS is the time at which LGH's lien and the assignment to DSS became legally effective.

In *West Neb. Gen. Hosp. v. Farmers Ins. Exch.*, 239 Neb. 281, 284, 475 N.W.2d 901, 905 (1991), we held that a hospital lien "attaches upon admission of the patient to the hospital for treatment." Thus, LGH's lien attached on May 24, 1987, when Perry was admitted for hospital care. On August 5, LGH satisfied the notice requirement of § 52-401 by serving written notice on Battle Creek and Ehlers concerning LGH's hospital lien.

If by itself a DSS application under § 68-1026 operates as a transfer of an applicant's right to receive payments from a third party, DSS would be entitled to receive such payments without obligating itself to pay medical assistance benefits or without paying medical expenses on behalf of the applicant, both of which would be a classic case of DSS' getting something for nothing. Therefore, in the present case, Perry's assignment to DSS became legally effective either on the date on which DSS obligated itself to pay medical expenses pursuant to Perry's application, a date undisclosed in the record, but obviously sometime after June 30, 1987, or on August 17, the date on which DSS commenced payments on behalf of Perry for his medical expenses necessitated by the automobile accident. Thus, the benefit to Perry was DSS' first payment of his medical expenses, and conversely, the detriment to DSS was its payment of medical expenses on Perry's behalf. Consequently, Perry's assignment to DSS became legally effective on August 17 after LGH's lien had attached on May 24.

However, given the language of § 68-1026, the dispositive issue concerning LGH and DSS is whether the statutory

assignment to DSS, resulting from Perry's application for benefits, is retroactive to May 1, 1987, asserted by DSS as the date of Perry's eligibility for state benefits, so that the assignment to DSS takes precedence over LGH's lien, which attached on May 24.

While an interpretation of § 68-1026, albeit a somewhat dubious interpretation, might be that "eligibility for such benefits" is not expressly restricted to the time after an application under § 68-1026, one then encounters the incongruity that an applicant is eligible for medical assistance benefits before occurrence of the event that necessitates the medical expenses which are the basis of the application. In Perry's situation, according to DSS, Perry became eligible for medical benefits more than 3 weeks before the accident that caused the injuries which were the basis of his application to DSS. Would that all government operated so efficiently.

However, in our examination of § 68-1026, we find no statutory language expressing a clear legislative intent that an assignment to DSS is retroactive and thereby supersedes a valid hospital lien acquired under § 52-401 when the hospital lien has attached before DSS obligates itself to pay, or does pay, medical assistance benefits in response to an application under § 68-1026. Thus, if Perry's June 30 application under § 68-1026 resulted in an immediate statutory assignment that was retroactive to May 1, determined by DSS as the date of Perry's eligibility for benefits, then the statutory assignment to DSS would circumvent LGH's lien and would be superior to the hospital's lien against the settlement fund in the interpleader action. In the foregoing situation, and through circumvention by retroactivity of the statutory assignment, DSS would eliminate a property right validly acquired by LGH on May 24 under § 52-401, thereby raising a serious constitutional question whether the State had unconstitutionally deprived LGH of its property in the form of a valid statutory lien. If a statute is susceptible to more than one reasonable construction, a court uses the construction that will achieve the statute's purpose and preserve the statute's validity. See, *Doak v. Milbauer*, 216 Neb. 331, 343 N.W.2d 751 (1984); *State ex rel. Johnson v. Marsh*, 149 Neb. 1, 29 N.W.2d 799 (1947). See, also,

*Union Stock Yards Co. v. Nebraska State Railway Commission*, 103 Neb. 224, 170 N.W. 908, *modified* 103 Neb. 224, 172 N.W. 528 (1919).

Therefore, we now hold that the statutory assignment to DSS under § 68-1026 is subject to a valid hospital lien acquired under § 52-401 when the hospital lien exists before DSS obligates itself to pay, or pays, medical assistance benefits pursuant to an application under § 68-1026. For that reason, LGH's lien, validly acquired before DSS made payments pursuant to Perry's application for medical assistance benefits, is superior to DSS' statutory assignment under § 68-1026.

Since LGH charged Perry $86,308.74 for care during his initial hospital admission that commenced on May 24, 1987, it is immaterial and, therefore, undecided, whether LGH's claim is based on the aggregate of charges reflected in three distinct liens for separate hospital confinements, that is, the sum of all charges for multiple admissions to the hospital, or whether LGH's claim is based on one continuing lien for care commenced on May 24 as the result of the automobile accident and concluded on August 31 at a charge of $116,309. Before Perry's assignment to DSS became legally effective, the charges for his initial hospital admission alone were $86,308.74, an amount exceeding the settlement fund of $66,667 available for distribution after McCord's fee. Therefore, LGH's charges, included within its hospital lien, exceed the amount of the settlement fund available for distribution through the interpleader action.

### DSS' SUBROGATION RIGHT

DSS fares no better with its claim based on a subrogation right acquired under § 68-716 rather than a statutory assignment effected pursuant to § 68-1026.

Subrogation is substitution of one person who is not a volunteer, a subrogee, for another, a subrogor, as the result of the subrogee's payment of a debt owed to the subrogor so that the subrogee succeeds to the subrogor's right to recover the amount paid by the subrogee. See, *Chadron Energy Corp. v. First Nat. Bank*, 236 Neb. 173, 459 N.W.2d 718 (1990); *State Auto. & Cas. Underwriters v. Farmers Ins. Exchange*, 204 Neb.

414, 282 N.W.2d 601 (1979); *Garrity v. Rural Mut. Ins. Co.*, 77 Wis. 2d 537, 253 N.W.2d 512 (1977).

" ' " 'Subrogation is the right of one, who has paid an obligation which another should have paid, to be indemnified by the other.' " ' " *Chadron Energy Corp. v. First Nat. Bank*, 236 Neb. at 194, 459 N.W.2d at 734. To be entitled to subrogation, one must pay a debt for which another is liable. See, *State Auto. & Cas. Underwriters v. Farmers Ins. Exchange, supra*; *Luikart v. Buck*, 131 Neb. 866, 270 N.W. 495 (1936); *Garrity v. Rural Mut. Ins. Co., supra*; *In re Anchor State Bank*, 234 Wis. 261, 291 N.W. 329 (1940); *Kansas City Title & Trust Co. v. Fourth Nat'l Bank*, 135 Kan. 414, 10 P.2d 896 (1932).

Thus, DSS did not acquire a subrogation right until August 17, 1987, when DSS began paying Perry's medical expenses. Since DSS began payment on behalf of Perry well after LGH's lien attached, DSS' subrogation right is inferior to LGH's lien.

## PERRY'S CROSS-APPEAL

In his cross-appeal, Perry contends that the court erred in concluding that the assignment under § 68-1026 entitled DSS to receipt of Perry's share of the settlement proceeds. However, since we have determined that satisfaction of LGH's lien will consume all the settlement proceeds after the distribution for McCord's fee, resolution of any dispute between Perry and DSS is unnecessary under the circumstances.

## CONCLUSION

Because the district court erred in finding that LGH and DSS had waived their individual and statutorily based claims against the settlement fund deposited in the interpleader action and erred in finding that Perry's assignment to DSS was superior to LGH's lien, we reverse the district court's judgment and remand this cause to the district court with direction to enter judgment for LGH and distribute to LGH $66,667, the sum remaining in the settlement fund after distribution of $33,333 to McCord for his attorney fee.

REVERSED AND REMANDED WITH DIRECTION.