AMERICAN NATIONAL BANK, A NATIONAL BANKING ASSOCIATION, APPELLANT, V. GREGORY R. CLARK AND CHERYL ANN CLARK, HUSBAND AND WIFE, ET AL., APPELLEES.

670 N.W.2d 484

Filed October 28, 2003.    No. A-01-1009.

Emmett D. Childers, of Hillman, Forman, Nelsen, Childers & McCormack, for appellant.

Douglas E. Quinn and Michael T. Eversden, of McGrath, North, Mullin & Kratz, P.C., for appellees.

HANNON and MOORE, Judges, and BUCKLEY, District Judge, Retired.

PER CURIAM.

In *American Nat. Bank v. Clark*, 11 Neb. App. 722, 660 N.W.2d 530 (2003), this court determined that Gregory R. Clark, Cheryl Ann Clark, and their mortgagee, First Union Mortgage Corporation (First Union) (collectively the defendants), were

subrogated to the rights of two previous mortgageholders, North American Savings Bank (North American) and First Bank, on property which the Clarks had purchased from Michael Tesmer and Lori Tesmer. American National Bank (ANB) held a mortgage on the same property which was inferior to the two mortgages the defendants had paid at the time the Clarks purchased the property but prior in time to those mortgages and therefore superior to the rights of the defendants as to their deed and mortgage. We determined that the defendants were subrogated to the rights of North American and First Bank, the holders of the paid mortgages, to the extent of $196,183.91, plus interest at the contractual rate provided in the mortgages. We also held that ANB could foreclose its mortgage subject to the interest of the defendants without the consent of the defendants. The opinion contains a complete summary of the facts and the law we concluded was applicable to this case, and we will restate such matters only to the extent necessary to make this opinion coherent.

ANB filed a motion for rehearing, arguing that this court erred in that opinion in three respects: (1) in determining the amount in which the defendants were subrogated, (2) in holding that the agreement between the Clarks and First Union constituted a basis for granting them subrogation, and (3) in not addressing the defendants' negligence in not searching the record, insofar as such negligence precluded any right to subrogation.

The Clarks paid $195,000 for the property and borrowed $165,000 from First Union to do so. When the sale was closed on December 1, 1997, these first liens on the property were paid:

| | |
|---|---|
| North American | $100,388.44 |
| First Bank | 98,165.82 |
| Total | $198,554.26 |

In order to close the sale, money came from various sources:

| | |
|---|---|
| From Clarks in cash at closing | $ 29,201.13 |
| Earnest money from Clarks | 3,000.00 |
| From Tesmers | 12,256.24 |
| From $165,000 First Union loan | 157,442.78 |
| From Clarks' employer | 6,540.00 |
| | $208,440.15 |

The district court found that the defendants were subrogated to the rights of North American and First Bank in the sum of

$208,440.15, plus interest at the legal rate. In our opinion, we decreased this by the amount that the Tesmers paid to get the transaction closed, that is, $12,256.24. We therefore concluded that the amount in which the defendants should be subrogated was $196,183.91, plus interest at the contractual rate.

■ In its brief in support of its motion for rehearing, ANB argued:

As cited by the Court of Appeals, in its Opinion on page 5, "the general rule is that a subrogee is entitled to indemnity to the <u>extent only of the money actually paid by him to discharge the obligation</u> . . ." 73 Am.Jur. 2d, Subrogation §67 at 599 (2001) (Emphasis supplied). <u>Ehlers v. Perry</u>, 242 Neb. 208, 494 N.W.2d 325 (1993).

Brief for appellant on motion for rehearing at 4. ANB then listed costs and fees totaling $6,540 in connection with the Clarks' loan from First Union and argued that the amount of the subrogation lien should be decreased by that sum since no part of that sum was paid by the defendants to either North American or First Bank.

■ We agree with the above rule and have concluded that we applied it incorrectly. The application of the rule is complicated because the money for the sale came from several sources and the liens made the distribution of the money difficult. Restated with this rationale, the above rule can be expressed as follows:

Subrogation is the substitution of another person in the place of a creditor so that the person in whose favor it is exercised succeeds to the rights of a creditor in relation to the defendant, but such subrogee can acquire no greater right than the creditor had to whose right he succeeds at the time of such payment by him [as accomplishes the subrogation].

*American Surety Co. v. School District,* 117 Neb. 6, 19, 219 N.W. 583, 588 (1928).

We think that the significant figure in applying that rule in this case is the amount of the claims that the prior lienholders, North American and First Bank, would have been owed had they not been paid on December 1, 1997, plus interest for the time after that payment. This figure would be $198,554.26, plus interest.

■ However, upon further analysis, we think that there is a second limitation to the defendants' subrogation rights. The only Nebraska Supreme Court case we find expressing this second limitation is *Eaton v. Lambert*, 1 Neb. 339 (1871), which held that a surety suing to recover after paying a judgment can recover from his or her principal only the amount the surety paid to satisfy the judgment. Stated more generally:

> Justice and equity are served only to the extent that an aggrieved party is returned to its rightful position. Thus, subrogation is limited to indemnification or reimbursement, and a surety will be subrogated to, and can enforce, the rights of the creditor only to the extent necessary to obtain reimbursement for the amount which the surety has actually paid.

83 C.J.S. *Subrogation* § 66 at 612-13 (2000). Applied to this case, this rule limits the defendants' subrogation right to the amount the Clarks paid for the property. First Union would be limited to a portion of the total that it loaned the Clarks, but the usual terms of a mortgage would make that question academic.

In its brief in support of the motion for rehearing, ANB pointed out evidence which shows that a $6,540 sum paid at the time of closing of the sale was not paid by the defendants. It is clear that this $6,540 amount was not applied on the prior mortgages, and therefore, the defendants would have no basis to claim subrogation for this cost. The argument draws attention to one of the difficulties encountered, as did the correction we made in the district court's determination of the amount of the defendants' subrogation right, but we conclude that neither approach contains the correct analysis.

The record shows that the prior lienholders were paid $198,554.26, and our opinion subrogated ANB to only $196,183.91. Under the above rules, one of the limitations is that the subrogation right of the defendants could not be greater than $198,554.26. However, there is a further limitation, that being the amount that the defendants have invested in the property. The settlement statement of the sale shows that the Clarks paid only $195,000 for the property and that First Union loaned them only part of that purchase price. Equity would not protect them for more than the $195,000 they invested in the property,

plus interest. The amount that the Tesmers paid, the amount that the Clarks paid to their lender, and the other expenses of their loan or of the purchase are irrelevant. The effect is that the Tesmers supplied all of the money in excess of $195,000 that North American, the first lienholder, received, and the Clarks contributed enough money to pay the purchase price, which was over $165,000—$165,000 having been the amount of the loan—as well as the expenses of obtaining the loan and buying the property.

In our opinion, we stated that the interest rate that the defendants would receive on their subrogation right was the contract rate. We did not support that statement with analysis or authority, and we did not consider the effect of the fact that the amount of their subrogation right is less than the total of the two mortgages that were paid. "According to some cases the surety can recover the rate of interest stipulated in the note on the amount he or she has been compelled to pay, but there is authority for limiting the surety's recovery to legal interest only if the amount stipulated in the instrument is higher." 83 C.J.S., *supra* at 613-14. "Subrogation contemplates full substitution and places the party subrogated in the shoes of the creditor." 73 Am. Jur. 2d *Subrogation* § 61 at 595 (2001). "One who is subrogated to rights under a mortgage . . . is generally entitled to recover, in addition to the principal sum expressed therein, interest from the date of payment. The rate of interest may be the rate called for in the mortgage . . . ." *Id.*, § 69 at 600. Both of the mortgages to which the defendants are subrogated were paid at one time. We therefore conclude that for the purpose of computing interest, the $195,000 should be treated as prorated between the two mortgages in the proportion they each bear to their total, and that interest should be computed at those mortgages' contractual rates from December 1, 1997.

ANB also argues that this court erred in concluding that the defendants were subrogated to the prior mortgages at all and that subrogation is not available to the defendants as a matter of law because they or their agents were negligent. We think that it is most efficient to consider both issues together. In its original brief, ANB relied upon *State v. Holdrege State Bank*, 110 Neb. 814, 195 N.W. 120 (1923), and *Rice v. Winters*, 45 Neb. 517, 63

N.W. 830 (1895), for the proposition that equity will not apply the doctrine of subrogation where to do so would deprive one party of a legal right and at the same time reward the other party for his or her negligence. In our opinion, we considered those cases and recognized *Hoagland & Co. v. Decker*, 118 Neb. 194, 224 N.W. 14 (1929), as the more recent and applicable case. An analysis of *Decker* might help to explain our reason for relying upon that case.

In *Decker*, a property owner had purchased land on contract that was encumbered by a mortgage to the Union Central Life Insurance Company (Union Central) for $7,500. He began building a dwelling which gave rise to the plaintiff's construction lien. The property owner borrowed money from the Prudential Insurance Company (Prudential) to pay off the Union Central mortgage. Prudential required that the Union Central mortgage be paid off and also that lien waivers be obtained. The waivers were not obtained, and later, the plaintiff and another holder of a lien tried to foreclose their liens, claiming that those liens were superior to Prudential's mortgage. The property owner and Prudential claimed to be subrogated to the Union Central mortgage. The property owner and Prudential prevailed for the stated reasons that Prudential had required the property owner to pay off the Union Central mortgage and that the construction lienholders were in no worse position than they would have been if the Union Central mortgage had not been paid off. The *Decker* court stated that the failure to procure releases of the construction liens was not such negligence as would bar the right of subrogation.

The record in this case contains many documents. The direction from First Union to the closing agent is several single-spaced pages long and not only requires the payoff of existing loans but requires that the payoff be made in a specific manner. This is similar to the payoff requirements of Prudential in *Decker*, and likewise in this case, ANB was no worse off when the defendants were subrogated than it would have been had the prior liens not been paid. Any negligence in not learning of the existence of the ANB lien did not adversely affect ANB.

We therefore modify our previous opinion in this case by limiting the amount of the defendants' subrogation to $195,000,

with interest to be computed as stated above. With those modifications, our previous opinion is reaffirmed, and the motion for rehearing is overruled.

FORMER OPINION MODIFIED.
MOTION FOR REHEARING OVERRULED.